[No. S089010. July 12, 2001.]

STACY CORNETTE et al., Plaintiffs and Appellants, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

64

**COUNSEL**

Grassini & Wrinkle and Roland Wrinkle for Plaintiffs and Appellants.

William M. McMillan, Breland C. Gowan, David R. Simmes, Larry R. Danielson, Jill Siciliano and Kenneth G. Nellis for Defendant and Respondent.

Pollak, Vida & Fisher, Daniel P. Barer and Girard Fisher for 105 California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BROWN, J.**—A public entity is liable for injury proximately caused by a dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventive measures. (Gov. Code, § 835, subd. (b);[1] *Baldwin v. State of California* (1972) 6 Cal.3d 424, 427 [99 Cal.Rptr. 145, 491 P.2d 1121] (*Baldwin*).)

However, a public entity may avoid such liability by raising the affirmative defense of *design immunity*. (§ 830.6.) A public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 939 [67 Cal.Rptr.2d 454] (*Grenier*); *Higgins v. State of California* (1997) 54 Cal.App.4th 177, 185 [62 Cal.Rptr.2d 459] (*Higgins*); *Hefner v. County of Sacramento* (1988) 197 Cal.App.3d 1007 [243 Cal.Rptr. 291], 1013-1014 (*Hefner*).)

Design immunity does not necessarily continue in perpetuity. (*Baldwin, supra*, 6 Cal.3d at p. 434.) To demonstrate loss of design immunity a plaintiff must also establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings. (§ 830.6; *Baldwin*, at p. 438.)

The third element of design immunity, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, must be tried by the court, not the jury. Section 830.6 makes it quite clear that "the trial or appellate court" is to determine whether "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

The question presented by this case is whether the Legislature intended that the three issues involved in determining whether a public entity has lost

---

[1]Hereafter, unless otherwise indicated, all section references are to the Government Code.

its design immunity should also be tried by the court. Our examination of the text of section 830.6, the legislative history of that section, and our prior decisions leads us to the conclusion that, where triable issues of material fact are presented, as they were here, a plaintiff has a right to a jury trial as to the issues involved in loss of design immunity.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an automobile accident suffered by plaintiffs Stacy and Rodney Cornette while they were driving northbound on the Antelope Valley Freeway (State Route 14) in Los Angeles County. Another northbound vehicle sideswiped plaintiffs' car and forced it across the open median of the freeway and into the southbound lanes, where it came to rest before being hit by a southbound vehicle. The accident occurred just beyond the end of a median barrier that defendant Department of Transportation (Caltrans) had constructed from the south. Plaintiffs, both of whom suffered substantial injuries, filed suit against a number of parties. We are concerned only with their claim against Caltrans, which was based on the allegedly dangerous condition of the highway created by the absence of a median barrier at the location of the accident.

When the case was called for trial, Caltrans, which had raised the affirmative defense of design immunity, asked the court to bifurcate the proceeding and try that issue first. (Code Civ. Proc., § 597.) The trial court granted this request and went on to rule that none of the issues relating to the existence of design immunity or its loss would be submitted to the jury; rather, these issues would be tried solely by the court as the trier of fact. This was done over the objection of plaintiffs, who contended that, with the exception of the third element of design immunity (substantial evidence of the reasonableness of the adoption of the design), all of the issues relating to design immunity or its loss should be tried to the jury.

There was no real dispute about whether the absence of a median barrier at the location of the accident had made the highway dangerous by the time the accident occurred on May 23, 1992. Plaintiffs stipulated that designing the freeway without a median barrier was reasonable when the freeway was built in 1964. However, the physical conditions had changed in the interim. Both the traffic volume and the number of cross-median accidents had significantly increased. As a result, on August 21, 1990, Caltrans decided to install a median barrier along a five-mile stretch of the freeway that included the location where this accident would later occur, and on July 27, 1991, the Caltrans district office recommended that a high priority be given to the project because five more cross-median accidents, three with injuries and

two with fatalities, had occurred in 1990. Unfortunately, the project was not completed until January 18, 1996, long after this accident occurred.

What was in dispute was (1) when Caltrans had notice that changed physical conditions had made the freeway at that location dangerous without a median barrier; and (2) whether the installation of the barrier was unreasonably delayed. The evidence presented by plaintiffs tended to show that Caltrans had notice by May 30, 1989, that the cross-median accident rate at that location greatly exceeded Caltrans guidelines for the installation of median barriers, and that, given the high priority the agency should therefore have attached to the project, Caltrans reasonably should have installed at least a temporary median barrier before the accident occurred almost three years later. The evidence presented by Caltrans, on the other hand, tended to show that Caltrans did not have notice until August 1990, and that a median barrier project usually takes Caltrans four and a half to five years to complete, so that Caltrans could not have been reasonably expected to have installed the barrier before this accident occurred in 1992.

Resolving the factual disputes in favor of Caltrans, the trial court found that Caltrans had established design immunity and had not lost it. Judgment was entered for Caltrans, plaintiffs appealed, and the Court of Appeal reversed and remanded for a new trial. The trial court, the Court of Appeal held, had improperly denied plaintiffs their right to a jury trial of the disputed issues pertaining to the question whether Caltrans had lost its design immunity. We affirm the judgment of the Court of Appeal.

DISCUSSION

I. *A Public Entity May Rely upon Design Immunity as a Defense to a Claim of Liability for a Dangerous Condition*

Section 835, subdivision (b) provides that a public entity is liable for injury proximately caused by a dangerous condition of its property if the dangerous condition created a reasonably foreseeable risk of the kind of injury sustained, and the public entity had actual or constructive notice of the condition a sufficient time before the injury to have taken preventive measures.[2] (*Baldwin, supra*, 6 Cal.3d at p. 427.) The state's failure to erect median barriers to prevent cross-median accidents may result in such liability. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 720 [159 Cal.Rptr. 835, 602 P.2d 755].)

---

[2]Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the

■　However, under section 830.6, the public entity may escape such liability by raising the affirmative defense of "design immunity." Section 830.6 provides in relevant part: "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor."

In other words, a public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design. (*Grenier, supra,* 57 Cal.App.4th at p. 939; *Higgins, supra,* 54 Cal.App.4th at p. 185; *Hefner, supra,* 197 Cal.App.3d at pp. 1013-1014.)

The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. (*Baldwin, supra,* 6 Cal.3d at pp. 432, fn. 7, 434.) " ' "[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested." ' [Citation.]" (*Cameron v. State of California* (1972) 7 Cal.3d 318, 326 [102 Cal.Rptr. 305, 497 P.2d 777] (*Cameron*).)

## II.　*A Public Entity's Design Immunity Defense May Be Lost by Proof of Changed Conditions*

As originally enacted, section 830.6 made no provision for loss of design immunity, and when this court first addressed the question, we held that design immunity, once acquired, persisted regardless of any subsequent

dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

change of conditions. "In *Cabell* [*v. State of California* (1967) 67 Cal.2d 150 [60 Cal.Rptr. 476, 430 P.2d 34, 34 A.L.R.3d 1154]], we held that section 830.6 immunized the state from liability arising from the breaking of a glass door which was installed and maintained according to state specifications even though the glass had shattered on three previous occasions causing personal injuries. In *Becker* [*v. Johnston* (1967) 67 Cal.2d 163 [60 Cal.Rptr. 485, 430 P.2d 43],] we reached the same conclusion concerning a highway intersection designed in 1927, when ' "they also had horses and buggies . . ." ' (67 Cal.2d at p. 173) using local roads, despite evidence of eight accidents in the four years preceding plaintiff's injury." (*Baldwin*, *supra*, 6 Cal.3d at p. 431.) Indeed, we quoted with approval from a practice guide stating that a " 'plan or design . . . judged . . . reasonable when adopted is not actionable even though its defective nature is considered wholly unreasonable under present circumstances and conditions.' [Citation.]" (*Cabell*, at p. 153, quoted in *Baldwin*, at p. 432, fn. 6.)

In 1969, the California Law Revision Commission recommended that the Legislature effectively overrule *Cabell* and *Becker* by amending section 830.6 to provide that design immunity "should be considered to have terminated when the court finds that (1) the plan or design, as effectuated, has actually resulted in a 'dangerous condition' at the time of an injury, (2) prior injuries have occurred that demonstrate that fact, and (3) the public entity has had knowledge of these prior injuries and a reasonable time to protect against the dangerous condition." (Recommendation Relating to Sovereign Immunity (Sept. 1969) 9 Cal. Law Revision Com. Rep. (1969) p. 819 (Recommendation).)

While the Legislature did not adopt this recommendation, we overruled *Cabell* and *Becker* in *Baldwin*. (*Baldwin*, *supra*, 6 Cal.3d at p. 427.) The question presented in *Baldwin* was "whether a public entity retains its statutory immunity from liability for injury caused by the plan or design of a construction of, or an improvement to, public property where the plan or design, although approved in advance as being safe, nevertheless in its actual operation becomes dangerous under changed physical conditions." (*Id.* at p. 426.) The dangerous condition in that case was an intersection on a state highway that did not have a left-turn lane, a design which was reasonable at the time it was constructed because the traffic volume in the area was light. However, in the 25 years that elapsed before Mr. Baldwin's accident, the traffic volume had greatly increased, resulting in a large number of serious rear-end collisions of the sort suffered by Mr. Baldwin, and this dangerous condition was repeatedly brought to the attention of the state. (*Id.* at pp. 427-431.) Under these circumstances, we held, the state could no longer rely on the defense of design immunity. "Once the entity has notice that the plan

or design, under changed physical conditions, has produced a dangerous condition of public property, it must act reasonably to correct or alleviate the hazard." (*Id.* at p. 434, fn. omitted.) Such notice, we explained, "may be actual or constructive and must be a sufficient time prior to the injury to have permitted the public entity to take measures to protect against the danger. (§ 835, subd. (b).)" (*Baldwin*, at p. 434, fn. 8.) In enacting section 830.6, "the Legislature did not intend that public entities should be permitted to shut their eyes to the operation of a plan or design once it has been transferred from blueprint to blacktop." (*Baldwin*, at p. 427.) Overruling *Cabell* and *Becker* to the extent they were inconsistent, we summarized our holding as follows: "[W]here a plan or design of a construction of, or improvement to, public property, although shown to have been reasonably approved in advance or prepared in conformity with standards previously so approved, as being safe, nevertheless in its actual operation under changed physical conditions produces a dangerous condition of public property and causes injury, the public entity does not retain the statutory immunity from liability conferred on it by section 830.6." (*Baldwin*, at p. 438, fn. omitted.)

In 1979, the Legislature responded to *Baldwin* by amending section 830.6 to specify the circumstances under which a public entity retains its design immunity despite having received notice that the plan or design has become dangerous because of a change of physical conditions.

Assembly Bill No. 893 (1979-1980 Reg. Sess.) (Assembly Bill No. 893) amended section 830.6 by adding the following three sentences: "Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee. In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard. However, where a person fails to heed such warning or occupies public property despite such warning, such failure or occupation shall not in itself constitute an assumption of the risk of the danger indicated by the warning." (Stats. 1979, ch. 481, § 1, pp. 1638-1639.)

Although referenced elsewhere in several legislative analyses, the purpose of the legislation was best explained by its author in a letter to the Governor urging him to approve it. "Although the staff of the Joint Committee agreed with *Baldwin*, it felt there should be some recognition of the practical limitations which have been imposed upon governments by Article XIII A of the California Constitution (Proposition 13) and ever increasing liability insurance costs. This recognition is achieved by AB 893. The bill is consistent with and carries out the concepts contained in the Law Revision Commission Comment to Govt. Code Section 830.6. The amendment allows entities a reasonable time to finance and take remedial action or to provide adequate warning of the dangerous condition. The public is sufficiently protected by those conditions which must be satisfied by the entity in order to be immunized." (Assemblyman John T. Knox, letter to Governor Edmund G. Brown, Jr., re Assem. Bill No. 893, Aug. 30, 1979, pp. 1-2.)

Therefore, under *Baldwin* and section 830.6 as amended, to demonstrate loss of design immunity a plaintiff must establish three elements: (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings.

III. *While Section 830.6 Reserves the Third Element of Design Immunity for the Court's Determination, It Does Not So Reserve the Three Elements of Loss of Design Immunity*

Section 830.6 clearly makes the resolution of the third element of design immunity, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, a matter for the court, not the jury. "[T]he trial or appellate court" is to determine whether "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6.)

The California Law Revision Commission recommended that the determination of the elements of the loss of design immunity also be reserved to the court. "[Design] immunity should be considered to have terminated *when the court finds* that (1) the plan or design, as effectuated, has actually resulted in a 'dangerous condition' at the time of an injury, (2) prior injuries have

occurred that demonstrate that fact, and (3) the public entity has had knowledge of these prior injuries and a reasonable time to protect against the dangerous condition." (Recommendation, *supra*, 9 Cal. Law Revision Com. Rep. at p. 819, italics added.)

As Assemblyman Knox's letter indicates, the Legislature had the recommendations of the California Law Revision Commission before it when it enacted Assembly Bill No. 893. (Assemblyman John T. Knox, letter to Governor Edmund G. Brown, Jr., re Assem. Bill No. 893, *supra*, at p. 1.) Nevertheless, the Legislature did *not* choose to follow the recommendation of the Law Revision Commission that it expressly reserve for the trial court the issues involved in loss of design immunity. (See § 830.6.)

Why the Legislature chose not to do so, we do not know; the legislative history is silent on this question. However, the one element of design immunity the Legislature did expressly reserve for the court, the existence of substantial evidence supporting the reasonableness of the adoption of the plan or design, differs significantly from the three elements of loss of design immunity. "[I]n enacting section 830.6, the Legislature was concerned lest juries be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan." (*Baldwin*, *supra*, 6 Cal.3d at p. 434.) The questions involved in loss of design immunity, e.g., whether the plan or design has become dangerous because of a change of physical conditions, are not the identical questions considered by the government officers who adopted or approved the plan. Therefore, the Legislature would arguably not have had the same rationale for taking such questions away from the jury. Again, "where experience has revealed the dangerous nature of the public improvement under changed physical conditions, the trier of fact will not simply be reweighing the same technical data and policy criteria which went into the original plan or design. Rather, there will then be objective evidence arising out of the actual operation of the plan—matters which, of necessity, could not have been contemplated by the government agency or employee who approved the design. No threat of undue interference with discretionary decision-making exists in this situation." (*Id.* at p. 435.)

We decline Caltrans's invitation to supply the language the Legislature omitted. ■ When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621-622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) A court may not rewrite a statute, either by inserting or omitting language, to make

it conform to a presumed intent that is not expressed. (Code Civ. Proc., § 1858; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 585 [94 Cal.Rptr.2d 3, 995 P.2d 139]; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

■ As Caltrans observes, several opinions of the Court of Appeal state that all of the elements necessary to establish design immunity are legal issues for the court to decide.[3] However, as the Court of Appeal in the present case observed, this view was expressed in the prior cases "without critical comment or explanation and without reference to the text of [section 830.6]." Moreover, as the Court of Appeal here further observed, all of these cases ultimately rely on one of two opinions, *Mozzetti, supra,* 67 Cal.App.3d 565, or *Cameron, supra,* 7 Cal.3d 318. (See fn. 3, *ante.*)

*Mozzetti* did state that "design immunity is a legal issue for the court." (*Mozzetti, supra,* 67 Cal.App.3d at p. 572.) The statement, however, was dictum. The defendants requested an instruction on design immunity, the trial court gave such an instruction, and the defendants then claimed on appeal that the instruction was prejudicially erroneous because the issues involved in the defense of design immunity are to be determined by the court rather than the jury. The Court of Appeal rejected the contention, holding that the defendants were estopped from complaining of the purported instructional error because they invited it; moreover, they had failed to present sufficient evidence on any one of the three elements of design immunity. (*Id.* at pp. 572-574.) The Court of Appeal in *Mozzetti* was simply not presented with the question whether the elements involved in *loss* of design immunity should be presented to the jury when, as here, the evidence as to those elements is disputed.

In *Cameron*, the plaintiffs were injured when the automobile in which they were passengers went out of control while the driver was attempting to negotiate an S-curve on a state highway. In their suit against the state, the plaintiffs claimed the curve was improperly banked, creating a dangerous condition that caused the accident. The trial court's ruling, we observed,

---

[3]See, e.g., *Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 728 [95 Cal.Rptr.2d 719], citing *Cameron, supra,* 7 Cal.3d at page 325; *Higgins, supra,* 54 CalApp.4th at pages 184-185, citing *Uyeno v. State of California* (1991) 234 Cal.App.3d 1371, 1376 [286 Cal.Rptr. 328]; *Uyeno,* at page 1376, citing *Mozzetti v. City of Brisbane* (1977) 67 Cal.App.3d 565, 572 [136 Cal.Rptr. 751] (*Mozzetti*) and *Muffett v. Royster* (1983) 147 Cal.App.3d 289, 306 [195 Cal.Rptr. 73]; *Bane v. State of California* (1989) 208 Cal.App.3d 860, 867 [256 Cal.Rptr. 468], citing *Cameron,* at page 325; *Hefner, supra,* 197 Cal.App.3d at page 1014, citing *Muffett,* at pages 306-307; *Muffett,* at page 306, citing *Mozzetti, supra,* 67 Cal.App.3d 565; *Mozzetti,* at page 572.

would be "most accurately designated a ruling on a motion for directed verdict to the effect that the state had established as a matter of law all the elements of the defense of design immunity contained in section 830.6." (*Cameron, supra,* 7 Cal.3d at p. 324.) We reversed, holding that the state had presented *no* evidence that the banking built into the curve "was the result of or conformed to a design approved by the public entity vested with discretionary authority." (*Id.* at p. 326.) An appreciation of the procedural context of the case is critical to a proper understanding of our decision in *Cameron.* We did not say or even suggest that the first two elements of design immunity, much less the three elements required to prove loss of design immunity, were issues of law for the court to decide if it were not ruling on a motion for a directed verdict.

The question whether loss of design immunity is a question reserved for the court was not directly addressed in *Baldwin.* However, we appear to have assumed it was *not* reserved to the court because we used the term "trier of fact,"[4] a choice of terminology that is significant both because it is used interchangeably to refer to a judge or jury (Garner, Dict. of Modern Legal Usage (2d ed. 1995) p. 891) and because it recognizes the factual, rather than strictly legal, character of the inquiry. Moreover, the context in which the term was used strongly suggests the *Baldwin* court meant *juries* when it referred to the *trier of fact,* for in the immediately preceding paragraph, the court speaks of the purpose of design immunity as addressing the Legislature's concern "lest *juries* be allowed to second-guess the discretionary determinations of public officials by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan." (*Baldwin, supra,* 6 Cal.3d at p. 434, italics added.) Quoting the New York Court of Appeals opinion in *Weiss v. Fote* (1960) 7 N.Y.2d 579, 588 [200 N.Y.S.2d 409, 167 N.E.2d 63, 67-68], the *Baldwin* court continues, " 'We are of the opinion that the traditional reliance on a *jury* verdict to assess fault and general tort liability is misplaced where a duly authorized public planning body has entertained and passed on the very same question or risk as would ordinarily go to the *jury.*' " (*Baldwin,* at p. 435, italics added.)

Caltrans's remaining arguments are confusing. ■ Article I, section 16 of the California Constitution provides in pertinent part that "[t]rial by jury is an inviolate right and shall be secured to all . . . ." The constitutional right to a jury trial is the right as it existed at common law, when the state

---

[4]"[W]here experience has revealed the dangerous nature of the public improvement under changed physical conditions, the *trier of fact* will not simply be reweighing the same technical data and policy criteria which went into the original plan or design." (*Baldwin, supra,* 6 Cal.3d at p. 435, italics added.)

Constitution was first adopted. (*Crouchman v. Superior Court* (1988) 45 Cal.3d 1167, 1173-1174 [248 Cal.Rptr. 626, 755 P.2d 1075].) ▮ Caltrans makes a feint in the direction of arguing that a plaintiff has no constitutional right to a jury trial as to loss of design immunity because the underlying action—the action against a public entity under section 835 for an injury caused by a dangerous condition of its property—did not exist at common law. However, Caltrans then pulls up short and concedes the point: "There is no doubt—and we do not contend otherwise—that a plaintiff has a right to a jury trial in such an action."

Caltrans then switches direction and makes a very different argument— that "the design immunity defense is a *special proceeding* and there is no right to a jury trial in a special proceeding unless the applicable statute expressly so provides." (Italics added.) ▮ The second of these compound assertions—that there is no right to a jury trial in a special proceeding unless it is made applicable by statute—is unexceptionable. (See, e.g., *Vallejo etc. R. R. Co. v. Reed Orchard Co.* (1915) 169 Cal. 545, 556 [147 P. 238]; *Canavin v. Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 534, fn. 10 [196 Cal.Rptr. 82]; *Kinder v. Superior Court* (1978) 78 Cal.App.3d 574, 581 [144 Cal.Rptr. 291].) ▮ However, the operative assertion— that the design immunity defense is a special proceeding—is patently incorrect. Judicial remedies are either actions or special proceedings. (Code Civ. Proc., § 21.) An action "is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) "Every other remedy is a special proceeding." (Code Civ. Proc., § 23.) Caltrans does not attempt to explain why the defense of design immunity should be considered a special proceeding, except to say that "[a] special proceeding may be commenced independently of the pending action." This does not advance Caltrans's case because, as plaintiffs point out, "[t]he bifurcated trial of the changed conditions exception to the design immunity defense was not 'commenced independently of the pending action'—it was part and parcel of the pending action." In conclusion, Caltrans is simply wrong about design immunity being a special proceeding; it is an affirmative defense in an action brought under Government Code section 835 to, in the words of Code of Civil Procedure section 22, "redress . . . a wrong."

Next, relying on *Windsor Square Homeowners Assn. v. Citation Homes* (1997) 54 Cal.App.4th 547 [62 Cal.Rptr.2d 818], Caltrans contends the issues involved in determining whether design immunity has been lost are to be tried to the court because they are "mixed questions of law and fact." *Windsor Square* is quite inapposite. The question presented there was

whether the facts underlying the defense of res judicata are to be tried to the court. (*Id.* at pp. 550, 557.) The Court of Appeal's explanation for its conclusion that such factual issues are to be tried to the court makes it abundantly clear why *Windsor Square* is distinguishable from this case. "The issues [underlying the applicability of the res judicata defense] are often mixed fact-law determinations, involving, for instance, the assertion of jurisdiction, a decision better made by the court alone. Ordinarily, the facts that need to be determined are fairly simple—for example, what the complaint alleges in the first action versus what the complaint alleges in the second action. The pleadings must be studied to determine what claims were or could have been raised, who were the parties sued, whether the party against whom the bar is asserted was in privity with a party to the prior suit, whether the prior adjudication was a judgment on the merits. While all these issues may have factual predicates, they are peculiarly legal determinations." (*Id.* at p. 557.) It is simply not true that the issues involved in loss of design immunity, e.g., whether the public entity had notice of the dangerous condition and had a reasonable time to remedy it, are peculiarly legal determinations.

Finally, an amici curiae brief was filed by 89 California cities in support of Caltrans; the California State Association of Counties and 16 more California cities subsequently joined the brief. The amici curiae's brief raises a flurry of arguments, and plaintiffs have moved to strike most of them on the ground they were not presented in the trial court and not urged by the parties on appeal. ▪ Because amicus curiae presentations assist the court by broadening its perspectives on the issues raised by the parties, we are inclined, except in cases of obvious abuse of the amicus curiae privilege, not to employ orders to strike as a means of regulating their contents. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 405, fn. 14 [11 Cal.Rptr.2d 51, 834 P.2d 745, 48 A.L.R.5th 835].) ▪ Plaintiffs' motion to strike is accordingly denied. However, we will confine our discussion to what amici curiae denominate as the "central point" of their brief, which is that "there are *two* times when a public entity may engage in a discretionary design decision. The first is the initial approval of the design. The second is when, in light of later notice that the design may be dangerous in actual operation, the entity evaluates whether the design is still reasonable. This second decision is no less an exercise of discretion than the first. Therefore, the protection of the substantial evidence test should apply equally to *both*. . . . *Baldwin* suggests this conclusion, and the wording of the 1979 amendment to Government Code section 830.6 confirms it."

The passage in *Baldwin* that amici curiae find suggestive is the following: "It is clear that the declarations submitted in support of the state's motion in

this case were insufficient to warrant entry of summary judgment. As we have previously stated, these declarations contain facts amply demonstrating the *initial* applicability of the design immunity provided by section 830.6. However, understandably relying upon *Cabell* and *Becker*, *the state failed to make any showing whatsoever on the crucial issue of whether the immunity remains*. Since, as we now hold, the planning immunity may be dissolved by evidence that the plan or design under changed physical conditions has produced a dangerous condition, *it was incumbent upon the state to present facts indicating that the immunity is still intact*. In the absence of such a showing, the state as moving party, has not established all elements necessary to sustain a judgment in its favor. [Citations.] Consequently, the entry of summary judgment was erroneous." (*Baldwin*, *supra*, 6 Cal.3d at pp. 439-440, second and third italics added.)

Amici curiae concede that "*Baldwin* did not specify what facts would establish that immunity was not lost. In *Baldwin*, the State did not attempt to show facts indicating the immunity remained. Therefore, this Court had no opportunity to pass upon what facts would be required." However, amici curiae contend, "*Baldwin* hinted at the answer. It quoted from *Weiss v. Fote*[, *supra*,] 7 N.Y.2d 579 [167 N.E.2d 63], a case the California Law Revision Commission had considered when drafting section 830.6. (*Baldwin*, [*supra*,] 6 Cal.3d at p. 433.) *Baldwin* quotes *Weiss* for the proposition that 'once having planned the intersection, the State was under a continuing duty to review its plan in the light of its actual operation . . . .' (*Ibid.*, quoting *Weiss*, [*supra*,] 167 N.E.2d at p. 67.) *Baldwin* then interpreted *Weiss* to mean that once the entity [has notice that] the design, under changed physical conditions, has produced a dangerous condition of public property, 'it must act reasonably to correct or alleviate the hazard.' (*Baldwin*, *supra*, 6 Cal.3d at p. 434.) But *Baldwin* did not elaborate what action would suffice to retain the immunity."

To the contrary, the state could have retained its immunity by correcting or alleviating the hazard, and the *Baldwin* court clearly indicated the sort of measure that would have corrected the hazard. The intersection in *Baldwin* had been designed without a left-turn lane, and because of a large increase in traffic over the years, the design had become dangerous. (*Baldwin*, *supra*, 6 Cal.3d at pp. 427-429.) Simply erecting a barrier to prevent left turns would have corrected the hazard. (*Id.* at p. 437.) The state failed to show that it had undertaken any such corrective measures. Moreover, although section 830.6 had not yet been amended, this court might have been receptive to a showing that the state had not had sufficient time to obtain the funds for such a barrier or to install it. We noted that "section 835.4 . . . provides that even if a plaintiff proves the existence of a dangerous condition under section 835, the

public entity may avoid liability if it establishes that 'the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable.' The reasonableness of the action or inaction by the government body is to be determined 'by taking into consideration the *time* and *opportunity* it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury.' (§ 835.4.)" (*Baldwin*, at pp. 436-437, italics added.) So far as the opinion reflects, the state made no such showing.

We now turn to the assertion by amici curiae that the wording of the 1979 amendment to section 830.6 confirms their contention that the amendment immunizes a second design decision—when an entity, having been put on notice that the original design may have become dangerous because of changed physical conditions, decides that the design is still reasonable—and that review of this second design decision is also reserved to the trial or appellate court and is also subject to the substantial evidence test.

Amici curiae rely upon the phrase in the introductory clause of the first of the three sentences that were added to section 830.6 in 1979: "Notwithstanding notice that constructed or improved public property may *no longer* be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee . . . ." (Stats. 1979, ch. 481, § 1, p. 1638, italics added.) Amici curiae profess to find in *Baldwin* and the Legislature's use of the phrase *no longer* "two interlocking keys of the design immunity puzzle." "The 1979 amendment's 'notwithstanding clause,'" amici curiae contend, "recites the kind of proof that will retain the immunity: Proof that the public property *still* 'conform[s] with a . . . design . . . which reasonably could be approved by the legislative body or other body or employee.'" And this decision—the decision that the original design could still be so approved—is the second design decision that amici curiae contend is reserved to the court and subject to the substantial evidence test.

The problem with amici curiae's argument is that is not what the Legislature said. What the Legislature said is that the immunity continues for sufficient time to permit the public entity to remedy the dangerous condition, or, if it cannot remedy it, to post warnings. The language in question does not allude to a *finding* by the public entity as to whether its design is or is not reasonable in light of changed circumstances, but merely indicates that, notwithstanding the public entity's *notice* that its design immunity *may* have become unreasonable, its immunity continues to provide it with reasonable time and opportunity to remedy or warn of the inadequacy of the existing

design. "Notwithstanding notice that constructed or improved public property may no longer be in conformity with a plan or design or a standard which reasonably could be approved by the legislative body or other body or employee, the immunity provided by this section shall continue for a reasonable period of time sufficient to permit the public entity to obtain funds for and carry out remedial work necessary to allow such public property to be in conformity with a plan or design approved by the legislative body of the public entity or other body or employee, or with a plan or design in conformity with a standard previously approved by such legislative body or other body or employee. In the event that the public entity is unable to remedy such public property because of practical impossibility or lack of sufficient funds, the immunity provided by this section shall remain so long as such public entity shall reasonably attempt to provide adequate warnings of the existence of the condition not conforming to the approved plan or design or to the approved standard." (Stats. 1979, ch. 481, § 1, p. 1638.)

In conclusion, we affirm the judgment of the Court of Appeal.[5]

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

Respondent's petition for a rehearing was denied August 22, 2001.

---

[5]Both plaintiffs and amici curiae request that we take judicial notice of various items in the legislative history of the 1979 amendment to section 830.6. We grant the requests. We also grant the request made by amici curiae that we take judicial notice of the *signed* copy of the trial court's statement of decision.