Filed 2/9/26  Nunez v. Dept. of Transportation CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| FRANCISCO NUNEZ, Plaintiff and Appellant, v. DEPARTMENT OF TRANSPORTATION, Defendant and Respondent. | F088696 (Super. Ct. No. CV-20-005549) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Sonny S. Sandhu, Judge.

Dolan Law Firm, Jeremy M. Jessup; Law Office of Valerie T. McGinty and Valerie Tallant McGinty for Plaintiff and Appellant.

Erin E. Holbrook, Chief Counsel, Alan M. Steinberg, Deputy Chief Counsel, Richard A. Capella, Assistant Chief Counsel, and Darren S. Nakashima for Defendant and Respondent.

-ooOoo-

Appellant Francisco Nunez appeals following a grant of summary judgment in favor of respondent State of California by and through the Department of Transportation (Caltrans). Appellant sued after he was struck by a car and injured while crossing a street in Oakdale. In addition to suing the driver, Niklaus Siguenza, appellant sued Caltrans, alleging a dangerous condition of public property. Caltrans moved for summary judgment on several grounds and challenged appellant's expert evidence. Based on its interpretation of a federal statute, the trial court ultimately excluded evidence related to prior accidents at the intersection and expert opinions relying on that evidence. It then granted summary judgment in favor of Caltrans. For the reasons set forth below, we affirm the summary judgment ruling.

### FACTUAL AND PROCEDURAL BACKGROUND

Around 8:00 p.m. on January 19, 2020, appellant attempted to cross the intersection of State Routes 120 and 108 and 6th Avenue in Oakdale (the intersection). State Routes 120 and 108 operate as a city street within Oakdale, and their intersection with 6th Avenue is marked with a crosswalk and signs indicating drivers must yield to pedestrians. The relevant crosswalk at the intersection spans five total lanes of traffic: two running east; two running west; and a center turn lane.

Two cars approached the intersection and corner where appellant attempted his crossing. The driver of the car closest to the sidewalk noticed appellant and slowed to a stop to allow him to cross. Appellant entered the road and proceeded in front of that vehicle. The second car, being driven by Siguenza at what was initially stated to be 50 miles per hour, did not stop and struck appellant in the crosswalk after he passed the first car. Appellant suffered severe injuries, including the amputation of one leg.

Appellant subsequently filed a lawsuit against Siguenza that included a cause of action against the State of California, the County of Stanislaus, and the City of Oakdale (ultimately handled by Caltrans) alleging the defendants "designed, engineered, owned,

2.

stripped [*sic*] and signed, failed to strip [*sic*] and sign, operated, controlled, and/or maintained the roadway" in a manner that constituted a dangerous condition and created a trap for unwary pedestrians. Caltrans filed a response which, among other grounds, alleged design immunity precluded the cause of action under Government Code section 830.6.[1]

In line with this defense, Caltrans moved for summary judgment, arguing there was no dangerous condition at the property and that design immunity precluded the cause of action. In support of the motion, Caltrans submitted an expert declaration from Nazir Lalani, a professional registered traffic and civil engineer. Lalani explained he had inspected the intersection and reviewed numerous documents related to the lawsuit and to past improvements and modifications to the intersection. Lalani's expert report focused on improvements made from 2004 through 2016 since the overall layout of the intersection had not changed since 2004.

Lalani noted that each improvement or modification to the intersection had been discretionarily approved as reflected in "As Built" plans and the intersection remained consistent with those approvals and plans. Included in those improvements and modifications are the installation of high visibility crosswalk markings and related signage in 2016. Lilani explained that these improvements included marking the crosswalk with high visibility ladder markings, additional yield lines commonly referred to as "Shark's teeth," and "YIELD HERE TO PEDESTRIANS" signs. These road markings conformed to the "2014 Edition of the CAMUTCD including [Revisions] 1 and 2,"[2] and all three improvements were discretionarily approved by one Mike Orr. In total, Lalani opined that a review of relevant plans for the intersection indicated it was

---

[1]    Undesignated statutory references are to the Government Code.

[2]    CAMUTCD is an acronym for the California Manual on Uniform Traffic Control Devices.

"designed in accordance with the Highway Design Manuals applicable at the time they were prepared and consistent with the design guidance in the 2014 Edition of the Highway related to sight distance, lane widths, geometry and road grade" and that the "signing and striping" "was as consistent with 2014 Edition of the CAMUTCD including [Revisions] 1 and 2." Lalani further explained this conclusion and provided references to all relevant signs and markings required by the CAMUTCD. His overall opinion was that the design of the intersection, conforming to these relevant design requirements, was reasonable as discretionarily approved and that all signage "followed and met engineering standards and principles and were reasonable."

Appellant opposed the motion, using his own expert, Dale Dunlap. Like Lalani, Dunlap inspected the accident location and described the overall layout of the intersection and surrounding area. Dunlap conducted his own speed survey, finding the 85th percentile, or critical speed, of traffic traveling in the same direction as Siguenza was 37.6 miles per hour. Dunlap also collected information from the Statewide Integrated Traffic Records System (SWITRS)[3] to determine the accident history for the intersection. Over a period of roughly 11 years, Dunlap noted 45 total accidents, 11 of which were automobile versus pedestrian accidents and six more of which were rear end collisions that Dunlap concluded likely occurred because of pedestrian traffic. Seven of the 11 automobile versus pedestrian accidents allegedly occurred under "darkness lighting conditions." Dunlap included summaries of these incidents in an attachment to his declaration.

Dunlap then evaluated the overall roadway conditions. He concluded that there were too many uncontrolled intersections across the entire roadway. Relying on CAMUTCD section 3B.18, which states that crosswalks should not be installed

---

[3] SWITRS is a database that collects and retains reported accidents for a period of 10 years, plus the current year, and is maintained by the California Highway Patrol.

indiscriminately but rather should follow an engineering study of the location and not be used without other measures designed to reduce traffic speeds or enhance driver awareness where the speed limit exceeds 40 miles per hour and more than 12,000 vehicles per day traverse the roadway, Dunlap found that marking the crosswalks at all five intersections from the convergence of State Routes 120 and 108 to the intersection was excessive.[4]  According to Dunlap, "it would have been advisable to remove one of the crosswalks and direct pedestrians to use the crosswalk on the other side of 6th Avenue" and "the State could then have installed additional traffic controls such as In-Roadway Warning Lights and/or flashing beacons."  Dunlap believed that Caltrans should have known of this assertedly dangerous condition based in part on the accident history at the intersection.  In conclusion, Dunlap asserted this was a "traffic operations" issue which arose when Caltrans failed to follow recommendations related to crosswalk installations.

Appellant used this information in his summary judgment opposition to support his argument that the intersection was "so disproportionately dangerous relative to other intersections BECAUSE the initial design was not reasonable" that design immunity could not apply.  In an initial tentative ruling, the trial court relied on the accident data to deny summary judgment.  However, at the hearing on the summary judgment motion, the court heard argument that appellant's accident history data was inadmissible and requested additional briefing from both parties on the admissibly of the SWITRS data. Following the additional briefing, the trial court entered a judgment granting summary judgment.

---

[4]    As related support for his position, Dunlap cited to a 2005 Federal Highway Administration study finding marked crosswalks with no additional improvements were associated with higher pedestrian crash rates compared to unmarked crosswalks on multilane roads with traffic volumes above 12,000 vehicles per day.  Dunlap also cited to 2013 and 2020 Caltrans Traffic Volumes Books showing traffic increased from 25,700 vehicles per day to 30,000 vehicles per day at the closest count location to the accident cite.

In granting summary judgment, the trial court wrote that Caltrans's "moving pleadings and accompanying evidence amply meet its initial burden of proof on the motion."  The court then noted that because it was now excluding appellant's accident history, along with some other evidence, appellant's "opposing pleadings and evidence **do not** create a triable dispute regarding any of the causes of action contained in his operative complaint."[5]  The court then went on to explain why it was excluding the SWITRS data under 23 United States Code section 407.

This appeal timely followed.

## DISCUSSION

Appellant's briefing—as occurred before the trial court—frames this case in the standard context for summary judgment motions.  Appellant first discusses the standard of review for an appeal from a summary judgment.[6]  Next, appellant contends Caltrans failed to meet its burden of negating the claim of a dangerous condition or "showing as a matter of law that the design was reasonable (so as to be immunized)."  (Boldface omitted.)  Finally, appellant contends he raised a triable issue of fact regarding dangerousness and on whether the design was reasonable.  While such framing is proper for most disputed aspects of this case, it fails to account for the unique nature of a design immunity claim—which is statutorily defined in a manner that requires a different analysis.  Accordingly, as set forth below, appellant's arguments cannot demonstrate

---

[5]     Caltrans argues this ruling means appellant must demonstrate every ground raised before the trial court could not support the summary judgment ruling.  Appellant has not done so and contends his arguments are sufficient.  We do not reach this dispute because we find that design immunity, one of the issues briefed, supports the judgment.

[6]     The parties identify an existing dispute in the law regarding how to review rulings on evidentiary objections decided based on the papers alone.  (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [noting conflict between de novo and abuse of discretion review].)  We need not decide that issue here, as the evidentiary conflict is ultimately unnecessary to our decision and an error would be found under either standard.

6.

summary judgment was improper because a dispute of fact regarding reasonableness does not preclude summary judgment in this context.

## *Standard of Review*

"A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant who moves for summary judgment bears the initial burden to show the action has no merit—that is, 'one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.'  (*Id.*, subds. (a), (p)(2).)  Once the defendant clears this initial hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact."  (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construing the evidence in favor of the party opposing the motion and resolving all doubts about the evidence in favor of the opponent.  [Citation.]  We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary adjudication as a matter of law."  (*Doe v. Department of Corrections & Rehabilitation, supra*, 43 Cal.App.5th at p. 732.)

## *Caltrans's Design Immunity Defense*

On appeal, Caltrans argues that summary judgment was proper regardless of any dispute over the dangerousness of the intersection or over the admissibility of appellant's expert evidence because Caltrans was entitled to design immunity under section 830.6.  We agree.

### *Applicable Law*

The baseline rule is that a public entity is not liable for an injury unless liability is provided for by statute.  (§ 815.)  One such statute, the Government Claims Act,

"provides for direct liability on the part of public entities for injuries caused by maintaining dangerous conditions on their property when the condition 'created a reasonably foreseeable risk of the kind of injury which was incurred' and either an employee's negligence or wrongful act or omission caused the dangerous condition or the entity was on 'actual or constructive notice' of the condition in time to have taken preventive measures." (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347–348 (*Hampton*), quoting § 835.)

Liability under this statute is not absolute, however, and can still be limited by other principles, including additional statutorily defined immunities. (*Hampton, supra*, 62 Cal.4th at p. 348.) Relevant to this case, under section 830.6, a public entity may rely on what is known as design immunity. Design immunity seeks "to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design." (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).)

Design immunity requires the public entity to satisfy three elements: "(1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." (*Cornette, supra*, 26 Cal.4th at p. 69.) "The first two elements, causation and discretionary approval, may only be resolved as issues of law if the facts are undisputed." (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).) The third element, whether there is any substantial evidence of the reasonableness of the public entity's approval of the plan or design, is a question statutorily reserved for the court, not a jury. (§ 830.6; *Cornette, supra*, 26 Cal.4th at p. 72.)

This third question, operating as a question of law, results in design immunity typically being raised on a motion for summary judgment or nonsuit, thereby enabling the trial court to find the defense established as a matter of law. (*Gonzales v. City of Atwater* (2016) 6 Cal.App.5th 929, 946.) In considering such requests, the court is required to determine whether "there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." (§ 830.6; *Cornette, supra*, 26 Cal.4th at p. 72.) The court is "not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Grenier, supra*, 57 Cal.App.4th at p. 940.) "The public entity must be granted immunity as long as reasonable minds can differ concerning whether a design should have been approved; ' "[t]he statute does not require that property be perfectly designed, only that it be given a design which is reasonable under the circumstances.' ' " (*Gonzales*, at p. 946.)

Thus, when a government entity seeks to establish design immunity in the context of a summary judgment motion, " ' "[t]he normal rules governing a motion for summary judgment, and requiring its denial if any triable issue of fact appears, are not fully applicable." ' " (*Stufkosky v. Department of Transportation* (2023) 97 Cal.App.5th 492, 496–497.) " ' "For example, the defendant is not required to prove to the court that the design or plan was in fact a reasonable one. Instead, the defendant is merely required to adduce any 'substantial evidence' that a reasonable public employee or legislative body could have approved the plan or design used under [section] 830.6. Thus, when the defendant files a motion for summary judgment, the existence of a possible conflict of evidence, as shown by the proof submitted on the motion, will not create a triable issue on this aspect of the defense that can defeat a summary judgment." ' " (*Id.* at p. 497.)

9.

"Generally, a civil engineer's opinion regarding reasonableness is substantial evidence sufficient to satisfy this element," and approval of a "plan by competent professionals can, in and of itself, constitute substantial evidence of reasonableness." (*Grenier, supra*, 57 Cal.App.4th at p. 941.)

*Caltrans Has Demonstrated Design Immunity Applies*

On appeal, appellant raises no meaningful argument regarding the first two elements of the design immunity analysis—the causal connection and discretionary review elements—and this court notes that evidence of both exist in the record.[7] Rather, appellant argues first that Caltrans's evidence of reasonableness was not substantial because it did not consider average daily use, consolidating crossing points, accident history, or the use of warning lights and, second, that appellant's excluded evidence raised an issue of fact as to reasonableness.

On the first point, the record shows substantial evidence that approving the design was reasonable. As detailed by Lalani, all aspects of the intersection were "designed in accordance with the highway Design Manuals applicable at the time they were prepared and consistent with the design guidance in the 2014 Edition of the Highway related to sight distance, lane widths, geometry and road grade" and that the "signing and striping" "was as consistent with 2014 Edition of the CAMUTCD including [Revisions] 1 and 2." Lalani provided direct references to relevant design standards and incorporated a site visit and independent analysis that concluded all signage "followed and met engineering standards and principles and were reasonable." Moreover, Lalani affirmed that the relevant designs had been reviewed and discretionarily approved before being completed. Such direct and relevant analysis is substantial evidence of reasonableness, demonstrating

---

[7]     Appellant also makes no argument that design immunity, if it exists, was lost due to changed conditions known sufficiently in advance to allow the government to have taken measures to protect against the dangerous condition. (See *Grenier, supra*, 57 Cal.App.4th at pp. 942–943 [discussing loss of design immunity].)

10.

a reasonable government agent could have adopted the design. (See *Cornette, supra*, 26 Cal.4th at p. 72; *Grenier, supra*, 57 Cal.App.4th at p. 941.)

In opposing this conclusion, appellant relies on *Levin v. State of California* (1983) 146 Cal.App.3d 410 (*Levin*), *disapproved by Hampton, supra*, 62 Cal.4th at page 357, for the proposition that simply stating a design is in conformance with Caltrans guidelines does not make it so. Inherent in this claim is the unstated assertion that failing to discuss certain potential design factors, like traffic flow or the number of nearby crosswalks, means an expert's testimony cannot constitute substantial evidence of the reasonableness requirement for design immunity.

Similarly, appellant relies on *Davis v. Cordova Recreation & Park District* (1972) 24 Cal.App.3d 789, 799, where the Court of Appeal found a lack of substantial evidence supporting the claim that a pond with a steeply sloping bank was reasonably designed. Unlike *Levin*, however, in this case there were no design standards at issue. Rather, the only question was whether evidence that the pond was primarily intended for aesthetic purposes was substantial evidence of reasonableness of the design despite accepted knowledge that the pond would also be used by children for wading, swimming, and other play activities. (*Davis*, at p. 799.)

These cases do not support appellant's claim that the evidence presented by Caltrans fails to reach the level of substantial evidence demonstrating that a decisionmaker could conclude the design was reasonable. The core dispute in *Levin* centered on whether the failure to consider a specific design standard demonstrated a lack of discretion to approve a deviation. In that context, our Supreme Court explained that nothing in the law demonstrated "that, as opposed to being a circumstance that was relevant to the *reasonableness* of the plans at the time they were adopted in 1920, evidence concerning the approving employee's awareness of applicable standards was necessary to the prima facie showing for discretionary approval." (*Hampton, supra*,

11.

62 Cal.4th at pp. 357–358.) While *Levin* also briefly touched on the evidence underlying a reasonableness claim, it only went so far as to affirm basic principles such as silence is not evidence that reasonably inspires confidence or is of solid value and merely making a statement does not make it true. (*Levin, supra*, 146 Cal.App.3d at p. 418.)

Neither maxim is applicable here. Caltrans's expert identified the specific design standards that were followed in each improvement and concluded, in part based on a personal review of the site, that the overall design was reasonable because it was designed in accordance with standards applicable at the time and remained consistent with design guidance from as late as 2014. *Levin* is further distinguishable in the fact that the design flaw alleged there was an undefined condition not discussed and therefore not approved in the original plans. (*Levin, supra*, 146 Cal.App.3d at p. 418.) Here, the flaw alleged is that the plans as approved were not safe enough. Thus, in *Levin*, a bald immunity claim was rightly questioned because there were no relevant design plans to reasonably approve. In contrast and in line with the purpose of not second-guessing design decisions, in this case, the allegation that the design chosen was not the best for the circumstances despite the intersection being built in line with the discretionarily approved plans relies on a challenge to the reasonableness of approving the underlying design's use of existing standards.

Likewise, in *Davis*, the Court of Appeal was specifically concerned with whether reasonably foreseeable uses of the pond were sufficient to overcome the designer's claim that any design was reasonable because the pond was intended to only be aesthetic—not functional. (*Davis v. Cordova Recreation & Park District, supra*, 24 Cal.App.3d at p. 799.) No set standards supported or contradicted the design decision to steepen the banks and deepen the pond in a manner that created a hidden danger, leaving the parties disputing whether a park's pond design, which failed to account for playing children could be reasonable, and equally important, whether such a design constituted a trap.

(*Ibid.*) There, the court applied a commonsense approach and found that evidence which claimed reasonableness while failing to account for such a common and well-known use was insufficient to demonstrate design immunity. (*Id.* at pp. 799–800.) Such a conclusion has no impact here, where evidence shows certain design standards were met but allegations suggest others could have been considered and the dispute centers on whether failing to apply those alternative standards was reasonable.

Having concluded substantial evidence supports the reasonableness element, appellant's second claim, that the evidence created a material issue of fact on reasonableness, necessarily fails. (*Gonzales v. City of Atwater, supra*, 6 Cal.App.5th at p. 946 [explaining the public entity must be granted immunity if reasonable minds can differ concerning whether a design should have been approved].) Thus, even if the trial court had not excluded appellant's expert evidence on accident and traffic history,[8] there would still be no basis to deny summary judgment. However, the court also notes that appellant's evidence does not create a material issue of fact regarding the reasonableness of approving the designs. For example, while appellant cites to guidance that suggests caution in installing uncontrolled crosswalks, that guidance is specifically applicable to situations with high rates of daily traffic travelling more than 40 miles per hour. However, appellant's own expert only demonstrates the existence of high rates of daily traffic travelling less than 40 miles per hour. Similarly, while appellant notes several accidents at the intersection, appellant does not explain how this demonstrates an approval prior to those incidents was unreasonable, choosing to focus more on claims the evidence shows the intersection constituted a dangerous condition at the time of the

---

[8]     Although we need not resolve the admissibility of the evidence excluded, notably, the case law has not excluded such evidence under title 23 United States Code section 407 or its precursor, section 409, unless specifically gathered for a federal purpose. (See *Department of Transportation v. Superior Court* (1996) 47 Cal.App.4th 852, 856–857 [requiring proof that data was collected for enumerated federal purpose to be excluded].) Appellant points to no evidence showing the collection of SWITRS data is for a federal purpose.

collision.  Thus, even if design immunity could be defeated by demonstrating a material issue of fact on reasonableness, appellant would still not prevail.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


HILL, P. J.

WE CONCUR:


MEEHAN, J.


HARRELL, J.

14.