Filed 12/1/21  State of Cal. Dept. of Transportation v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION, | E076630 |
| Petitioner, | (Super.Ct.No. CIVDS1814806) |
| v. | ORDER MODIFYING OPINION; AND DENIAL OF AMENDED PETITION FOR REHEARING |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| JUAN MIGUEL CASTILLO et al., | |
| Real Parties in Interest. | |

The amended petition for rehearing filed by real parties in interest on November 24, 2021, is denied.  The opinion filed in this matter on November 8, 2021, is modified as follows:

Footnote 2 is deleted and replaced with the following:

1

After receiving the tentative opinion from this court, but prior to oral argument, the Castillos submitted a list of additional authorities.  The Castillos failed to indicate in what way these authorities were "not available in time to be included in the [return]." (Cal. Rules of Court, rule 8.254(a).)  Therefore, we will not discuss the additional authorities cited by the Castillos.

Except for this modification, the opinion remains unchanged.  The modification does not effect a change in the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.


We concur:

McKINSTER
Acting P. J.


MENETREZ
J.

Filed 11/8/21  State of Cal. Dept. of Transportation v. Superior Court CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br>    Respondent;<br><br>JUAN MIGUEL CASTILLO et al.,<br><br>    Real Parties in Interest. | E076630<br><br>(Super.Ct.No. CIVDS1814806)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Gilbert G. Ochoa, Judge.  Petition granted.

Erin E. Holbrook, Chief Counsel, Jerald M. Montoya, Deputy Chief Counsel, Richard A. Capella, Razmig Khayalian, Germaine C. Ng, Deputy Counsel for Petitioner.

1

No appearance for Respondent.

Asvar Law, Christopher A. Asvar, Jonathan Perez and Theresia K. Falter for Real Parties in Interest.

In a first amended complaint, real parties in interest Guadalupe Castillo (Guadalupe)[1] and Juan Miguel Castillo (Juan) through his guardian ad litem, sued petitioner State of California Department of Transportation (Caltrans), Daniel Flores (Flores), and Kemira Water Solutions (Kemira). The causes of action against Caltrans were for dangerous condition of public property and loss of consortium. The trial court denied Caltrans's motion for summary judgment. Caltrans petitioned this court for a writ of mandate directing the trial court to grant its motion. We issued an order to show cause why the relief should not be granted. We now grant the petition.

## FACTUAL AND PROCEDURAL HISTORY

A.     FIRST AMENDED COMPLAINT

On June 17, 2016, at approximately 11:00 p.m., Juan was driving southbound on U.S. 395. Juan was driving a 2012 Toyota Corolla, and his wife, Guadalupe, was in the passenger seat. For approximately 10 miles, Juan was driving behind two or three cars, which were behind Kemira's tanker truck that was driven by Flores. Kemira's tanker truck was traveling at 40 or 50 miles per hour. That 10-mile portion of U.S. 395 is a two-lane highway without turnouts or passing lanes.

---

[1] We use first names for the sake of clarity; no disrespect is intended.

2

Juan moved his car into the oncoming traffic lane in an attempt to accelerate past Kemira's tanker truck. Juan saw an oncoming northbound vehicle, swerved out of the way, lost control of his car, collided with Kemira's tanker truck, and his car was crushed beneath the tanker truck. The accident occurred south of Kraemer Junction, approximately two and one-half miles north of Macon Road. Due to the crash, Juan is in a permanent vegetative state and Guadalupe suffered a traumatic brain injury and multiple fractured bones. Juan was an aeronautics engineer and Guadalupe was a registered nurse.

In the dangerous condition of public property cause of action, Juan and Guadalupe (collectively, the Castillos) alleged Caltrans created a dangerous condition by not having passing lanes or turnouts for 10 miles, which meant "drivers are forced to overtake vehicles by driving into the dangerous oncoming flow of highway traffic . . . through a broken yellow line between the oncoming traffic lanes on the portion of US-395 where the accident occurred." The Castillos asserted the dangerous condition was a substantial factor in causing their injuries. The Castillos sought general and special damages.

B.     MOTION FOR SUMMARY JUDGMENT

Caltrans moved for summary judgment arguing that it had design immunity (Gov. Code, § 830.6). Caltrans contended the crash occurred "at or about post mile 35.96," where the speed limit is 65 miles per hour. In 2010, Caltrans added centerline rumble strips and restriped the area where the crash occurred (the subject location). In the 2010 restriping plans, no passing zones were specifically designated for striping

3

purposes. Postmiles 33.58 to 36.71 were not designated as no passing zones. The 2010 restriping plans were approved by Chris Hardimon (Hardimon), a registered civil engineer. Caltrans submitted the declaration of Christian Engelmann (Engelmann), a registered civil engineer and former Caltrans employee. Engelmann examined the subject location as well as design plans for the subject location and opined that the striping that allowed for passing was reasonable.

### C.     OPPOSITION

In opposing the motion for summary judgment, the Castillos asserted design immunity did not apply because roadway striping is an operations issue, not a design issue. Alternatively, if striping is a design issue, then the Castillos asserted Caltrans failed to provide substantial evidence that the design was reasonable because Caltrans's expert, Engelmann, based his opinions on an area that was not the crash site. The Castillos asserted the crash occurred near postmile 36.13, which is approximately 1,000 feet from the location examined by Engelmann. Additionally, the Castillos asserted the design did not meet the sight distance standards for passing set forth in the Highway Design Manual (HDM).

Next, the Castillos contended that, if Caltrans proved it had design immunity, then Caltrans lost that immunity. The Castillos asserted that, in 2014, the southbound passing lane north of the subject location was removed, which constituted a physical change. The Castillos contended that physical change rendered the design dangerous because the subject location allowed for passing but "it failed to meet the sight-distance requirements for a passing zone." The Castillos' expert, Dale R. Dunlap (Dunlap), a

4

registered civil engineer, described two reports that raised concerns regarding cross-centerline crashes on U.S. 395.  According to Dunlap, one of the reports, which concerned postmiles 35.5 to 45.9, reflected, " 'Between October 1, 2010 and September 30, 2013, 9.1% of accidents reported within the project limits were cross centerline collisions.' "

D.    REPLY

In its reply to the opposition, Caltrans contended that roadway striping is part of the design plan and therefore is a design issue—not an operations issue.  In regard to the alleged loss of design immunity, Caltrans asserted that a physical change in U.S. 395 miles away from the subject location could not support a loss of design immunity because the change is not connected to the subject location.  Additionally, Caltrans asserted it was improper to rely on Dunlap's hearsay regarding the reports.

**DISCUSSION**

A.    STANDARD OF REVIEW

The denial of a summary judgment motion is reviewed under the de novo standard.  (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.)  "In considering a request for summary judgment by a defendant, the statute instructs that such a party 'has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . can[not] be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material

5

facts exists as to that cause of action or a defense thereto.' " (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 527.)

B.     DESIGN IMMUNITY

Caltrans asserted that design immunity provided it a complete defense. "A public entity may be liable for personal injuries caused by the 'dangerous condition' of its property. (Gov. Code, §§ 830, 835.) An entity may avoid liability, however, through the affirmative defense of . . . design immunity. (Gov. Code, § 830.6.) 'A public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design.' " (*Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 20 (*Menges*).)

The first issue we address is the causal relationship between the design and the accident. "A [c]ausal relationship is proved by evidence the injury-producing feature was actually a part of the plan approved by the governmental entity . . . ." (*Higgins v. State of California* (1997) 54 Cal.App.4th 177, 185, abrogated on another point in *Cornette v. Department of Transp.* (2001) 26 Cal.4th 63, 73-74 & fn. 3; see also *Flournoy v. State* (1969) 275 Cal.App.2d 806, 811-812.)

The 2010 design for the addition of a centerline rumble strip to the subject location includes restriping. The design indicates which sections of the roadway should be striped as no passing zones and that the "pavement markers shall be placed . . . in

6

rumble strip depressions." The restriping design was approved by Hardimon, a registered civil engineer.

The 2010 design reflects that from postmile 33.58 to postmile 36.71, the restriping should indicate that passing is permitted. Caltrans's expert, Engelmann, asserted that the Castillos' collision occurred "at or near postmile 35.96." The Castillos' expert, Dunlap, asserted the collision occurred at approximate[ly] Post Mile 36.13." If the accident occurred at postmile 35.96 or 36.13, then it falls within the 2010 restriping design that allowed for passing, i.e., between postmiles 33.58 and 36.71. Therefore, the broken yellow striping that allowed for passing at the subject location was part of the 2010 restriping design.

The Castillos assert that the collision was caused by the subject location being striped for passing when the sight distance was inadequate for passing. Thus, there is an alleged causal relationship between the design, i.e., the 2010 design to stripe the subject location for passing, and the collision.

The Castillos asserted that striping was an operations issue, not a design issue. To support their assertion, the Castillos cited the deposition testimony of Caltrans's expert, Engelmann. Engelmann was asked, "[W]hat type of stripe is utilized is an operations issue; correct?" He responded, "It—it goes hand [in] hand. You can't really separate the two. You—you—they work together." Engelmann did not indicate that striping is purely an operations issue. Rather, he indicated that it is both a design and an operations issue. Given the details for restriping that were included in the 2010 design, there is not a triable issue of fact regarding the restriping being part of the design.

7

The second element we address is the discretionary approval element, which "asks whether a person vested with discretion to approve the plan did approve the plan or design that was built." (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 356.) Caltrans's expert, Engelmann, declared that Caltrans engineers exercise discretionary authority when deciding whether to approve a project's design prior to construction. Then, after construction is complete, an engineer decides whether to approve it "as-built" to indicate that the construction conforms to the plans.

The restriping portion of the 2010 design is marked as approved on January 14, 2010, by registered civil engineer Hardimon. The "as-built" approval date is July 28, 2010, which indicates that the restriping occurred sometime between January 15, 2010 and July 27, 2010. Thus, Hardimon's approval of the restriping design occurred prior to construction. One can infer from Hardimon's stamp on the plans that he was a Caltrans engineer, which means he had discretion to approve or reject the striping prior to construction. Because Hardimon had discretion to approve the restriping plans, and he approved them, we conclude the discretionary approval element was met.[2]

---

[2] After receiving the tentative opinion from this court, but prior to oral argument, the Castillos submitted a list of additional authorities. The Castillos failed to indicate in what way the listed authorities were "not available in time to be included in the [return]." (Cal. Rules of Court, rule 8.254(a).) Nevertheless, we will briefly discuss two of the cases cited: *Johnson v. State* (1968) 69 Cal.2d 782 (*Johnson*) and *State v. I'Anson* (1974 Alaska) 529 P.2d 188 (*I'Anson*). The list lacked pinpoint citations, so we have done our best to infer which sections of the opinions the Castillos deem relevant.

Government Code section 820.2 provides, "[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him . . . ." In *Johnson*, our Supreme Court discussed the type of acts that are discretionary and thus deserving of immunity under

*[footnote continued on next page]*

8

The third issue is the reasonableness of the plan or design. "The court's role in evaluating the third element of . . . design immunity is not to provide a de novo interpretation of the design, but instead to decide whether there is 'any substantial evidence' supporting its reasonableness. [Citation.] 'Any substantial evidence' to establish this third element of the immunity may consist of the following: Discretionary approval of the design plans themselves [citation]; the expert opinion of a civil engineer as to the reasonableness of the design [citation]; or evidence the design or plan complies with prevailing professional standards [citation]. 'A mere conflict in the testimony of expert witnesses provides no justification for the matter to go to a lay jury who will then second-guess the judgment of skilled public officials.' " (*Menges*, *supra*, 59

---

Government Code section 820.2. The high court explained, " '[I]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.' " (*Johnson*, *supra*, 69 Cal.2d at p. 788.) The court then set forth various factors for determining "whether the agency in a particular case should have immunity." (*Id.* at p. 789.) In other words, not every discretionary decision deserves governmental immunity.

The Alaska Supreme Court cited to *Johnson* when determining that roadway striping was not the type of "broad . . . policy decision" by a separate branch of government that deserved immunity. (*I'Anson, supra,* 529 P.2d at pp. 193-194.) The Alaska court concluded, "[R]esolution of questions such as whether or not the state properly striped or marked a portion of highway as it relates to the state's duty of care to users of the highway presents facts that courts are equipped to evaluate within traditional judicial fact-finding." (*I'Anson*, at p. 194.)

The problem with relying on *Johnson*, in the instant case, is that *Johnson* does not discuss design immunity (Gov. Code, § 830.6), rather, it discusses immunity for discretionary acts (Gov. Code, § 820.2). (*Johnson*, *supra*, 69 Cal.2d at pp. 787-790.) Because "*Johnson* interpreted a different statute employing different language from that found in [Government Code] section 830.6," we do not find it to be persuasive authority in this case. (*Hampton v. County of San Diego*, *supra*, 62 Cal.4th at p. 354.) In turn, we do not find *I'Anson* to be persuasive authority in this case.

9

Cal.App.5th at p. 21.) " ' "[A]s long as reasonable minds can differ concerning whether a design should have been approved, then the governmental entity must be granted immunity." ' " (*Id.* at p. 20.) " 'We are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted.' " (*Id.* at p. 19.)

The restriping portion of the 2010 design is marked as approved on January 14, 2010, by registered civil engineer Hardimon. Hardimon's discretionary approval of the plans is evidence of the design's reasonableness. (*Menges*, *supra*, 59 Cal.App.5th at p. 21.) Engelmann, who is also a registered civil engineer, opined that the design was reasonable. Engelmann went to the subject location and examined it. Engelmann's expert opinion is further evidence of the design's reasonableness. (*Menges*, at p. 21.) Therefore, there is substantial evidence of the design's reasonableness.

The Castillos assert that Engelmann's opinion is not reliable because Engelmann's opinion is based on an area 1,000 feet south of the crash site. Assuming the Castillos are correct that Engelmann's opinion of the crash site cannot be credited, there is still substantial evidence that the design is reasonable because "[d]iscretionary approval of the design plans themselves" can demonstrate reasonableness. (*Menges*, *supra*, 59 Cal.App.5th at p. 21.) Engelmann explained that Caltrans engineers exercise discretionary authority when deciding whether to approve project plans prior to construction. Therefore, Hardimon's approval, by itself, is substantial evidence of the reasonableness of the design.

10

The Castillos assert there is not substantial evidence of the design being reasonable because the design fails to comply with prevailing professional standards in that the minimum sight distance standards for passing were not met. The Castillos assert the HDM provides the applicable standard, which is a minimum sight distance of 2,300 feet in a 65-mile-an-hour zone. The Castillos assert the sight distance at the subject location fell to 1,599 feet. Caltrans asserts the relevant minimum sight distance for passing is provided by the California Manual on Uniform Traffic Control Devices (MUTCD), which requires a sight distance of 1,100 feet.

The Castillos' expert, Dunlap, asserted the HDM applies to the subject location because the HDM's longer sight distance guidelines concern passing in an oncoming traffic lane where two vehicles are traveling toward each other at 65 miles per hour. By contrast, the MUTCD's shorter sight distance requirement applies to situations involving passing "*stationary* vehicles or other *stationary* objects." When illustrating the concept of stationary objects in the roadway, Dunlap gave the examples of "a vehicle waiting at [an] intersection or along the side of the road preparing to enter the stream of traffic." Dunlap's explanation fails to indicate in what scenario Caltrans would place a passing lane in an intersection or in an area where vehicles stop on the side of a road. Besides, the proper standard to apply is part of the experts' opinions on reasonableness. As noted, that experts do not agree is irrelevant so long as there is substantial evidence that the design was reasonable.

Further, Dunlap failed to cite to sections of the HDM to support his conclusions concerning when the HDM applies versus the MUTCD. Thus, Dunlap has failed to

11

adequately clarify why the HDM, rather than the MUTCD, applies to the subject location.  As a result, Hardimon's approval of the restriping plan remains substantial evidence of the reasonableness of the design.

In sum, the broken line striping allowing for passing was part of the 2010 restriping plans; the broken line striping allowing for passing was alleged to have been a substantial factor in causing the crash; and Hardimon's approval of the 2010 restriping plan constitutes substantial evidence of the reasonableness of the restriping plan. Therefore, Caltrans established that it had design immunity.

C.     LOSS OF DESIGN IMMUNITY

In opposing the motion for summary judgment, the Castillos asserted Caltrans had lost its design immunity.  "To demonstrate loss of design immunity a plaintiff must establish three elements:  (1) the plan or design has become dangerous because of a change in physical conditions; (2) the public entity had actual or constructive notice of the dangerous condition thus created; and (3) the public entity had a reasonable time to obtain the funds and carry out the necessary remedial work to bring the property back into conformity with a reasonable design or plan, or the public entity, unable to remedy the condition due to practical impossibility or lack of funds, had not reasonably attempted to provide adequate warnings."  (*Cornette v. Department of Transp.*, *supra*, 26 Cal.4th at p. 72.)

In regard to the first element, the Castillos had to establish that "the plan or design, under changed physical conditions, has produced a dangerous condition of public property."  (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 434.)

" 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."  (Gov. Code, § 830, subd. (a).)

In the Castillos' opposition to the motion, the Castillos asserted a physical condition of U.S. 395, north of the subject location, physically changed when a passing lane was removed in 2014.  The Castillos asserted that the subject location was rendered dangerous by the change because "it failed to meet the sight-distance requirements for a passing zone."  We understand the Castillos' argument as follows:  The removal of the passing lane north of the subject location meant that, if southbound drivers wanted to pass slower moving vehicles without waiting, then they would do so in the subject location but the subject location was dangerous due to inadequate sight distance for passing.

In attempting to establish that the 2014 removal of the passing lane created a dangerous condition, the Castillos relied upon Dunlap's description of a report entitled "Project Report (Safety Improvement) EA 0N9720," which, according to Dunlap, reflected, " 'Between October 1, 2010 and September 30, 2013, 9.1% of accidents reported within the project limits were cross centerline collisions."  Further, the Castillos relied upon Dunlap's description of another report entitled "The 2005 Two and Three-Lane Monitoring Report."  According to Dunlap, the 2005 report reflected the subject location needed improvements, such as a centerline rumble strip, to reduce cross-centerline crashes.

13

The Castillos contend the passing lane was removed in 2014, but their evidence of dangerousness predates 2014. If the removal of the passing lane allegedly created the dangerous condition, then the Castillos need evidence of the road being dangerous after the passing lane was removed. (*Baldwin v. State of California*, *supra*, 6 Cal.3d at p. 438 ["changed physical conditions produce[] a dangerous condition of public property"].) To the extent the Castillos are asserting the subject location was dangerous prior to 2014, and the removal of the passing lane exacerbated the dangerousness, there is no evidence of the dangerousness being exacerbated because the Castillos do not provide post-2014 evidence of elevated dangerousness following removal of the passing lane.

A further problem with the Castillos' evidence is that they rely upon Dunlap's description of the two reports rather than including the reports as exhibits. In the trial court, Caltrans objected to Dunlap's descriptions of the reports because the reports were not attached as exhibits. "[A] witness's on-the-record recitation of sources relied on for an expert opinion does not transform inadmissible matter into 'independent proof' of any fact." (*People v. Gardeley* (1996) 14 Cal.4th 605, 619, disapproved on other grounds in *People v. Sanchez* (2016) 63 Cal.4th 665, 686, fn. 13.) Dunlap's descriptions of the two reports cannot be relied upon to prove dangerousness because the reports were not produced in court. In sum, the Castillos failed to demonstrate the subject location became dangerous following to the 2014 removal of the passing lane. As a result, the Castillos failed to establish that Caltrans lost its design immunity.

## DISPOSITION

The petition is granted.  Let a writ of mandate issue directing the trial court to vacate its order denying Caltrans's motion for summary judgment and to enter an order granting the motion for summary judgment.  Caltrans is awarded its costs in this writ proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                              J.

We concur:

McKINSTER _____
                        Acting P. J.

MENETREZ _____
                                    J.