Filed 3/19/14  City of Pasadena v. Super. Ct. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF PASADENA,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>     Respondent;<br><br>KIMMY LAM,<br><br>     Real Party in Interest. | B251571<br><br>(Los Angeles County<br>Super. Ct. No. GC049481) |

PETITION for writ of mandate from an order of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge.  Petition granted.

Michele Beal Bagneris, City Attorney, and Ann Sherwood Rider, Assistant City Attorney, for Petitioner.

No Appearance for Respondent.

A. Edward Ezor and Dennis V. Greene for Real Party in Interest.

_____

# INTRODUCTION

Plaintiff and Real Party in Interest Kimmy Lam (Plaintiff) sued Defendant and Petitioner City of Pasadena (City) under Government Code[1] section 835 for injuries sustained when Plaintiff fell while stepping off a curb on Hill Avenue.  The City moved for summary judgment on the theory of design immunity.  The City maintained the curb height that allegedly caused Plaintiff's injury was the result of a design approved by City officials reasonably exercising discretionary authority, thus immunizing the City from liability under section 830.6.  In opposition to the City's motion, Plaintiff presented an expert declaration challenging the design immunity defense.  Based on a photograph purporting to show the curb height measured 13 inches in the area Plaintiff fell, Plaintiff's expert opined the injury causing condition did not conform to the City's approved 12-inch-high curb design.  The City objected to the declaration on grounds that the photograph did not show where the end of the tape measure was placed to obtain the 13-inch measurement and, thus, Plaintiff's expert could not reasonably rely on the photograph in forming his proffered opinion.  The trial court overruled the objection and denied the City's summary judgment motion.  The City filed a petition for writ of mandate challenging the trial court's order.

We conclude the photograph at issue did not provide a reasonable basis for Plaintiff's expert's opinion and the trial court improperly relied upon the opinion in denying the City's summary judgment motion.  Because the City's evidence established the requisite elements for design immunity, and Plaintiff failed to present admissible evidence raising a triable issue of fact, we grant the City's petition for writ of mandate.

---

[1]     Unless otherwise specified, further statutory references are to the Government Code.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff's operative first amended complaint alleges that, on August 21, 2011, while stepping off the curb onto Hill Avenue, Plaintiff stepped into a drain, sustaining bone fractures to her right and left legs. The complaint alleges "[t]he drain is more than 14 inches below the curb and is a dangerous condition." Based on these allegations, and the City's alleged knowledge of the dangerous condition and failure to correct it, Plaintiff asserted the City was liable for her injuries under section 835.

The City moved for summary judgment asserting, among other affirmative defenses, that Plaintiff's claim was barred by design immunity under section 830.6. In support of the design immunity defense, the City presented declarations by its city engineer and claims coordinator, with supporting exhibits, showing: (1) the height of the curb where Plaintiff's injury occurred was part of a design approved by the Board of Directors of the City of Pasadena and the city engineer in 1957, before the curb was constructed; (2) the approved design was reasonable for the location on Hill Avenue; and (3) the curb height at the location conformed to the approved design, which specified a 12-inch high curb.

In opposition to the City's summary judgment motion, Plaintiff presented the declaration of her expert, Brad Avrit, a licensed civil engineer with a Bachelor of Science degree in Civil Engineering and extensive experience conducting investigations and analyses of premises safety. Avrit stated he reviewed documentation and other data related to the case, including the City's motion for summary judgment and supporting declarations, aerial photographs, various color photographs of the incident area and various plans and drawings. Avrit did not visit the accident scene to make personal observations or take his own measurements. Rather, in stating the foundation for his opinion, Avrit referred to "Photographs showing measurements of the subject area . . . , [which] depict the curb height to be greater than 13 inches." Noting the approved plan "depicts a curb height of exactly 12 inches in the subject area," Avrit opined that "the subject area was not constructed in accordance with the plans approved by the City of Pasadena."

3

The City objected to Avrit's proffered opinion on several grounds, including lack of foundation, lack of personal knowledge, speculation, and improper expert opinion. The City argued the opinion lacked foundation and was the product of speculation because Avrit never visited the scene of the accident and the photograph he relied upon "does not show the bottom of the tape measure to show that it is placed correctly or the exact location where the measurement was taken." The City emphasized that its city engineer, whose declaration was presented in support of the motion, had visited the scene of the accident and his personal measurements confirmed "the curb height was approximately 12 inches."

The trial court overruled the City's objection and denied the summary judgment motion. With respect to the design immunity defense, the court ruled Avrit's opinion raised "a triable issue of fact as to whether the subject area was built in accordance with approved plans."

The City filed a petition for writ of mandate challenging the order denying summary judgment. We stayed the trial court proceedings and issued an order to show cause why the relief requested in the petition should or should not be granted.

**DISCUSSION**

1.    *The Avrit Opinion Should Have Been Excluded*

  a. *Expert opinion based on speculation or conjecture must be excluded*

We begin with the City's contention that the trial court improperly admitted Avrit's opinion in rejecting the design immunity defense. " 'The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed.' " (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 563 (*Lockheed*).) "An expert opinion has no value if its basis is unsound." (*Id.* at p. 564.) " '[I]rrelevant or speculative matters are not a proper basis for an expert's opinion.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*).) " 'Where an expert bases his conclusion upon assumptions which are not supported by the record, upon matters which are not reasonably relied upon by other

4

experts, or upon factors which are speculative, remote or conjectural, then his conclusion has no evidentiary value.' " (*Lockheed*, at p. 563.)

Evidence Code section 801, subdivision (b), directs the trial court to determine whether the matter relied upon by an expert is the type of matter upon which an expert may reasonably rely "in forming an opinion upon the subject to which his testimony relates." This statutory directive means " 'the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible.' " (*Sargon, supra,* 55 Cal.4th at p. 770, quoting *Lockheed, supra,* 115 Cal.App.4th at p. 564.)

"Thus, under Evidence Code section 801, the trial court acts as a gatekeeper to exclude speculative or irrelevant expert opinion." (*Sargon, supra,* 55 Cal.4th at p. 770.) " '[T]he expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors . . . . [¶] Exclusion of expert opinions that rest on guess, surmise or conjecture [citation] is an inherent corollary to the foundational predicate for admission of the expert testimony: will the testimony assist the trier of fact to evaluate the issues it must decide?" [Citation.]' " (*Ibid.*)

> b. *The photograph Avrit relied upon is not a reasonable basis for assessing the curb height*

It is undisputed that Avrit did not personally examine the accident scene or measure the height of the curb at the location where Plaintiff fell. Instead, as Avrit's declaration admits, he relied exclusively on a photograph provided by Plaintiff to reach both his predicate conclusion that the curb height measured 13 inches and his ultimate opinion that the curb did not conform to the 12-inch height specification mandated by the City's approved design. The subject photograph was not a reasonable basis for either conclusion.

The photograph Avrit relied upon shows a flexible yellow tape measure placed vertically in front of a concrete curb, purporting to measure the curb's height. The top edge of the curb appears to align roughly with the 13-inch mark on the tape measure; however, neither the bottom of the curb, nor the starting end of the tape measure (i.e., the

zero-inch mark), are shown in the photograph. Rather, the lowest point on the tape measure shown in the photograph is roughly the four-and-a-quarter-inch mark. In other words, the photograph does not show where the starting end of the tape measure was placed with respect to the bottom of the curb. Nor does the photograph show whether, for instance, at some point below the four-and-a-quarter-inch mark, the flexible tape measure was bent to obtain the 13-inch measurement.[2]

Based on the photograph, Avrit concluded the curb height was "greater than 13 inches." But this conclusion, based entirely upon the subject photograph, was necessarily the product of speculation and surmise. At most, the photograph establishes the curb height was at least eight-and-three-quarters inches (i.e., the difference between the 13-inch mark on the tape measure that roughly aligns with the top of the curb and the four-and-a-quarter-inch mark where the bottom of the photograph ends). With only the photograph to work from, Avrit was left to speculate as to the curb's actual height in forming his opinion about whether the curb conformed to the City's approved design.[3] Such speculation is not a proper basis for expert opinion. The trial court erred in failing to exclude Avrit's opinion. (See *Sargon, supra,* 55 Cal.4th at p. 770.)

---

[2]     At oral argument, Plaintiff's counsel suggested that Plaintiff confirmed in her deposition testimony that the subject photograph accurately depicted the curb's height. We reviewed the portions of Plaintiff's deposition testimony that were presented to the trial court in connection with the summary judgment motion. Contrary to counsel's contention, Plaintiff testified she "wasn't there" when her husband took the measurement depicted in the photograph.

[3]     In her opposition brief, Plaintiff does not address this dispositive shortcoming concerning the photograph's reliability for determining the curb's height. Instead, Plaintiff focuses exclusively on two other contentions the City makes about the photograph—namely, its purported blurriness and whether it actually depicts the location where Plaintiff fell. While these were proper considerations for the trial court as gatekeeper under Evidence Code section 801, they have no bearing upon our resolution of the claimed error. We assume the trial court determined these disputed issues in favor of Plaintiff in admitting Avrit's opinion into evidence. Be that as it may, regardless of the photograph's blurriness or what curb it actually depicts, we can say as a matter of law that the photograph does not establish the predicate fact upon which Avrit's opinion was based—that the curb depicted actually was 13 inches high.

## 2. *The City Is Entitled to Summary Judgment*

### a. *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation] The pleadings define the issues to be considered on a motion for summary judgment. [Citation] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense." (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.) If the defendant makes the requisite prima facie showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064–1065.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

As we explain below, the City met its initial burden of establishing all elements for its design immunity defense. Plaintiff failed to present admissible evidence raising a triable issue of material fact as to any element of the defense. The City was therefore entitled to summary judgment.

### b. *The City established all elements for design immunity*

A public entity may be held liable for creating an injury-producing dangerous condition on its property or for failing to remedy a dangerous condition despite having had notice and sufficient time to protect against it. (§ 835.) However, under section

7

830.6, the public entity may escape such liability by raising the affirmative defense of "design immunity." [4] (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 69 (*Cornette*).) "[A] public entity claiming design immunity must establish three elements: (1) a causal relationship between the plan or design and the accident; (2) discretionary approval of the plan or design prior to construction; and (3) substantial evidence supporting the reasonableness of the plan or design." [5] (*Ibid.*)

The first two elements of the defense—causation and advance discretionary approval—are questions of fact, which may be resolved by summary judgment as issues of law only if the facts are undisputed. (*Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 (*Grenier*).) The last element—substantial evidence supporting the reasonableness of the design—is expressly reserved for determination by the trial or appellate court as an issue of law. (*Cornette, supra,* 26 Cal.4th at p. 73; see § 830.6

[4] Section 830.6 provides, in relevant part, "Neither a public entity nor a public employee is liable under this chapter for an injury caused by the plan or design of a construction of, or an improvement to, public property where such plan or design has been approved in advance of the construction or improvement by the legislative body of the public entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved, if the trial or appellate court determines that there is any substantial evidence upon the basis of which (a) a reasonable public employee could have adopted the plan or design or the standards therefor or (b) a reasonable legislative body or other body or employee could have approved the plan or design or the standards therefor." As our Supreme Court stated in *Cornette, supra,* 26 Cal.4th at p. 69, "The rationale for design immunity is to prevent a jury from second-guessing the decision of a public entity by reviewing the identical questions of risk that had previously been considered by the government officers who adopted or approved the plan or design. [Citation.] ' " '[T]o permit reexamination in tort litigation of particular discretionary decisions where reasonable men may differ as to how the discretion should be exercised would create too great a danger of impolitic interference with the freedom of decision-making by those public officials in whom the function of making such decisions has been vested.' " [Citation.]' "

[5] In rejecting the design immunity defense, the trial court also ruled a triable issue existed "as to whether there was a proper construction permit to an approved plan . . . ." Proof of a proper construction permit is not an element of the design immunity defense under section 830.6.

[requiring "trial or appellate court determin[ation] that there is any substantial evidence upon the basis of which . . . a reasonable public employee could have adopted [or approved] the plan or design"].)

We begin with the second element of the defense—advance discretionary approval. To establish this element, the public entity must show the injury-causing improvement's design was approved in advance of construction by public officials exercising discretionary authority to give such approval. (See *Sutton v. Golden Gate Bridge, Highway & Transportation Dist.* (1998) 68 Cal.App.4th 1149, 1159-1160 [design of bridge without median barrier approved by District board of directors]; cf. *Johnston v. County of Yolo* (1969) 274 Cal.App.2d 46, 53 [rejecting design immunity defense where, under applicable code provisions, county's road commissioner, not its board of supervisors, was the public agent charged with discretionary authority to approve subject design].) Here, the City's evidence showed the design for the 12-inch-high curb on Hill Avenue was approved by the Board of Directors of the City of Pasadena and the city engineer in 1957, prior to the curb's construction. This was sufficient to establish advance discretionary approval of the design.

The reasonableness of the design element requires only substantial evidence that the authorized officials acted reasonably in approving the design. (*Grenier, supra,* 57 Cal.App.4th at p. 940.) As noted, this determination is expressly reserved for the trial or appellate court under section 830.6. In deciding whether this element is established, "[w]e are not concerned with whether the evidence of reasonableness is undisputed; the statute provides immunity when there is substantial evidence of reasonableness, even if contradicted." (*Grenier,* at p. 940.) Here, the City presented the declaration of its city engineer, Daniel Rix, a registered engineer with a Bachelor of Science degree in Civil Engineering who has been employed by the City for over 30 years, including over 14 years as city engineer. Rix declared that he reviewed the curb design approved in 1957 and concurred it was a reasonable design for the subject location. This is substantial evidence of reasonableness. (See *id.* at p. 941 ["Generally, a civil engineer's

9

opinion regarding reasonableness is substantial evidence sufficient to satisfy this element"].)

Lastly, the City's evidence was sufficient to establish the causation element. Causation is established by evidence showing the alleged injury was caused by the approved design of an improvement to public property. (§ 830.6; see *Bay Area Rapid Transit Dist. v. Superior Court* (1996) 46 Cal.App.4th 476, 481-482 [plaintiff's fall due to lurching of train upon acceleration caused by approved design of acceleration system].) Here, Plaintiff claimed her injuries were caused by the height of the curb on Hill Avenue, which she alleged exceed 14 inches and constituted a dangerous condition. To support its summary judgment motion, the City presented a declaration by its city engineer, who personally measured the curb's height at the location where Plaintiff fell. Notwithstanding Plaintiff's allegation about the curb height, the City Engineer confirmed the curb conformed to the approved 12-inch-high design specifications. This was sufficient to make a prima facie showing that Plaintiff's alleged injury was caused by the curb's approved design.

The City's evidence established the requisite elements for design immunity. The burden thus shifted to Plaintiff to demonstrate the existence of a triable issue of material fact. To meet that burden, Plaintiff relied exclusively upon the opinion expressed in Avrit's declaration concerning the City's purported failure to conform the curb height to the approved design. As we discussed, Avrit's opinion was based upon speculation about the height of the curb and should have been excluded from evidence in ruling on the summary judgment motion. By the same token, the speculative opinion was insufficient to meet Plaintiff's burden. As the court stated in *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106, "An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural. [Citations.] Plaintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis . . . ." The trial court erred in denying the City's summary judgment motion.

10

## DISPOSITION

The petition is granted.  Let a writ of mandate issue directing the trial court to vacate its order denying the City of Pasadena's motion for summary judgment and to enter a new and different order granting the motion.  The stay of proceedings in the trial court is lifted.  The City of Pasadena is awarded its costs in this writ proceeding.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




KITCHING, J.

We concur:



CROSKEY, Acting P. J.




ALDRICH, J.


11